IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CARLOS REYNA, Individually and as | § | |
| Assignee of JOSE FABELO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:17-CV-00270-SS |
| | § | |
| GLOBAL HAWK INSURANCE, | § | |
| COMPANY (RRG), NIHILL INSURANCE | § | |
| SERVICES, LLC DBA ASCENSION | § | |
| INSURANCE AGENCY DBA AIA OF | § | |
| TEXAS, and STEPHANIE LANELL | § | |
| MORRISON, | § | |
| Defendants. | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff Carlos Reyna, as Assignee of Jose Fabelo, respectfully comes before this Court and files his Third Amended Complaint. Plaintiff Reyna, Individually and as Assignee of Mr. Fabelo, asserts the following factual allegations and causes of action against Defendants Global Hawk Insurance Company (RRG), Nihill Insurance Services, LLC dba Ascension Insurance Agency dba AIA of Texas, and Stephanie Lanell Morrison.

## I. PARTIES

1. Plaintiff, Carlos Reyna d/b/a El Reparto Express, is an individual residing in Austin, Texas.

2. Defendant, Global Hawk Insurance Company (Global Hawk), is a foreign risk retention group, licensed to sell commercial automobile insurance policies in Texas, with its principal place of business in Burlington, Vermont. Defendant has Answered this lawsuit through counsel.

3. Defendant Stephanie Lanell Morrison, an individual residing in Leander, Texas. Defendant may be served at 1901N S Hwy 183, Suite C, Leander, Texas 78641.

4. Defendant Nihill Insurance Services, LLC dba Ascension Insurance Agency dba AIA of Texas, is a domestic limited liability company with its principal place of business in San Antonio, Texas. Defendant may be served through its registered agent Paul M. Nihill, 1315 Crown Brook, San Antonio, Texas 78260.

## II. <u>JURISDICTION AND VENUE</u>

5. Plaintiff contends this Court does not have original jurisdiction over this matter.

6. This matter was initially filed in state court then removed to this Court based upon diversity jurisdiction since the parties at that time were citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

7. Now, Defendants includes two local defendants.

8. Section 1447(e) of Title 28 of the United States Code provides that if, after a case is removed, Plaintiff joined non-diverse defendants whose joiner acts to destroy diversity, the Court must then remand the case to state court.

## III. <u>FACTS</u>

9. Carlos Reyna d/b/a El Reparto Express (Mr. Reyna) is a commercial motor carrier authorized for hire by the U.S. Department of Transportation and operating under the Federal Motor Carrier Safety Regulations.

10. On November 11, 2014, Mr. Reyna purchased a commercial automobile insurance policy from Defendant Global Hawk, Policy No.: TXJ114105 ("the Policy"). The effective dates of this insurance policy were November 11, 2014 to November 11, 2015. The Policy identifies Mr. Reyna as an individual purchasing insurance coverage. A true and correct copy of the subject insurance policy is attached hereto as Exhibit "A".

11. Later in November of 2014, Mr. Reyna began arranging to include 2001 Freighliner Tractor, VIN 1FUJAHBD51PH08080, and a Trailer, VIN 5MC1162X4P004747. ("the Tractor-Trailer") to the Policy.

12. Mr. Reyna is not a commercial motor vehicle driver and does not possess a commercial driver's license. The Policy specifically excluded Mr. Reyna as an insured driver because he did not possess a commercial driver's license.

13. In November of 2014, Mr. Reyna contacted his insurance agency, Nihill Insurance Services, LLC dba Ascension Insurance Agency dba AIA of Texas ("Ascension"), and his insurance agent, Ms. Stephanie Lanell Morrison, requesting the Tractor-Trailer be added the Policy. Mr. Reyna sent Ascension a photo of the Tractor-Trailer's registrations.

14. Thereafter, but still in November of 2014, Mr. Reyna received an insurance card through U.S. Mail that identified the Tractor-Trailer as being a covered vehicle in the Policy.

## The Underlying Incident

15. On December 15, 2014, Mr. Reyna instructed Jose Fabelo to deliver the Tractor-Trailer to 16107 N. IH-35 in Pflugerville, Texas for a vehicle inspection. The inspection was necessary before the Tractor-Trailer could be put into service.

16. Mr. Reyna was on site to witness the inspection. While waiting for the inspection to take place, Mr. Reyna noticed what appeared to be fluid leaking from underneath the trailer. Curious to find out what was leaking, Mr. Reyna told Mr. Fabelo that he was going under the truck so that he could take a closer look. Mr. Fabelo heard and understood him. Moments later, the third-party inspector arrived and signaled for Mr. Fabelo to bring the truck forward. Without taking any action to ensure that Mr. Reyna was clear or to warn Mr. Reyna, Mr. Fabelo moved the truck

forward as directed by the third-party inspector. Mr. Fabelo did not look or otherwise attempt to confirm that Mr. Reyna was no longer under the vehicle.

17. As a direct and proximate result, both of Mr. Reyna's legs were run over, causing severe injuries and damages.

18. Mr. Reyna submitted a claim to Global Hawk under the Policy to compensate him for his injuries and medical treatment.

**Global Hawk's Wrongful Denial of Coverage and Material Misstatements**

19. Considering the Policy provided coverage for the Tractor-Trailer and the Underlying Incident, on December 17, 2014, Mr. Reyna's counsel sent Global Hawk a letter of representation requesting materials related to the Underlying Incident and a copy of the Policy that Mr. Reyna had purchased from Global Hawk.

20. Global Hawk did not respond. On January 6, 2015, Mr. Reyna sent the previous letter to Global Hawk again.

21. On January 26, 2015, Global Hawk responded and stated it needed more information to process Mr. Reyna's claim.

22. On or about January 20th and January 29, 2015, Mr. Reyna's counsel spoke with Global Hawk's adjuster, Jim Collins, regarding Mr. Reyna's claim and the surrounding facts. Mr. Collins was provided information as to how the incident occurred, the identity of the Tractor-Trailer and Mr. Fabelo, and photographs of the Tractor-Trailer.

23. On March 25, 2015, Defendant Global Hawk sent Mr. Reyna a Reservation of Rights letter that:

    a.   Incorrectly stated Global Hawk issued the Policy to El Reparto Express;

    b.   Stated Global Hawk was still investigating the claim; and

    c.   Wrongly identified three exclusions of the Policy that allegedly precluded coverage for this incident.

24. The Reservation of Rights letter did not state that the Tractor-Trailer was not a scheduled vehicle for which the Policy did not provide coverage.

25. On April 8, 2015, Global Hawk sent undersigned counsel a Denial of Claim – No Coverage Workers Comp letter that:

    a. Identified Mr. Reyna as a claimant;

    b. Incorrectly identified Mr. Reyna as an employee of El Reparto Express;

    c. Incorrectly stated Global Hawk issued the Policy to El Reparto Express;

    d. Confirmed the Tractor-Trailer as an insured vehicle;

    e. Confirmed the general facts—that Mr. Reyna's employee, Mr. Fabelo, ran over Mr. Reyna's legs; and

    f. Wrongly identified three exclusions of the Policy that allegedly precluded coverage for this incident.

26. The three wrongly asserted exclusions are found in Section II – Liability Coverage, B. Exclusions, and are: (1) Workers' Compensation; (2) Employee Indemnification and Employer's Liability; and (3) Fellow Employee, of the Policy.

27. The Workers' Compensation exclusion states that Plaintiff's insurance does not apply to: "Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law."

28. The Employee Indemnification and Employer's Liability exclusion states that Plaintiff's insurance does not apply to:

    "Bodily injury" to:

    a. An "employee" of the "insured" arising out of and in the course of:

    (1) Employment by the "insured"; or

    (2) Performing the duties related to the conduct of the "insured's" business; or

    b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above,

    This Exclusion applies:

(1) Whether the "insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purpose of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

29. The Fellow Employee exclusion states that Plaintiff's insurance does not apply to: "'Bodily injury' to any fellow 'employee' arising out of and in the course of the fellow 'employee's' employment or while performing duties related to the conduct of your business."

30. Defendant also knowingly and erroneously asserted that pursuant to the definitions set forth in 49 C.F.R. § 390.5, of the Motor Carrier Safety Improvement Act of 1999 (49 C.F.R. § 101 et seq.), which govern the meaning of terms used in commercial automobile liability insurance policies, Plaintiff was a statutory "employee" of his own company, and thus, coverage was wrongfully precluded.

31. Section 390.5 of Title 49 of the Code of Federal Regulations defines employee as

. . . any individual, __other than an employer__, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler… (emphasis added).

32. On or about April 24, 2015, Mr. Reyna responded to Global Hawk's Denial of Coverage Letter. Therein, Mr. Reyna pointed out under the Policy Mr. Fabelo was the "insured" (and Mr.

Reyna the "claimant") and that the Policy's exclusions were not applicable to the facts of Mr. Reyna and the Underlying Incident.

33. Specifically, Mr. Reyna advised any injuries he sustained would not be injuries for which "the insured may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law." Therefore, this exclusion does not apply to Mr. Reyna's claim.

34. Additionally, Mr. Reyna pointed out that Defendant entirely ignored the definition of "employer", which immediately follows the definition of "employee" and states:

> Employer means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it... 49 C.F.R. § 390.5.

35. Pursuant to those definitions, Mr. Reyna stated he was unmistakably an "employer" and, therefore, not subject to the employee exclusions that Global Hawk had knowingly and falsely relied upon to deny coverage.

36. Global Hawk did not respond. On or about May 8, 2015, Mr. Reyna resent its response to Global Hawk's letter denying coverage and attached a courtesy copy of Mr. Reyna's unfiled Original Petition.

### Plaintiff's Underlying Lawsuit Against Mr. Fabelo

37. Convinced the Policy afforded the Tractor-Trailer coverage for the Underlying Incident and that Global Hawk's reasons for denial were unwarranted, Mr. Reyna moved forward with his claim and filed his Original Petition.

38. On or about June 20, 2015, Mr. Reyna sent a file-stamped courtesy copy of Plaintiff's Original Petition to Defendant Global Hawk. Again, Global Hawk did not reply.

39. On or about June 22, 2015, Mr. Reyna served Mr. Fabelo with Plaintiff's Original Petition.

40. Thereafter, on or about July 5, 2015, Mr. Reyna wrote to Global Hawk to confirm its receipt of Plaintiff's Original Petition and the unfiled courtesy copy. Mr. Reyna again attached a filed copy of his Original Petition and advised Global Hawk that he had properly served Mr. Fabelo. Again, Global Hawk did not reply, and did not assign counsel to defend Mr. Fabelo.

41. On July 9, 2015, Defendant Global Hawk's legal counsel, Norcal Logistics Lawyers Group, PC, ("NLLG") sent Mr. Reyna directly a letter stated NLLG was retained by Global Hawk to investigate Mr. Reyna's claim. NLLG's letter:

    a. Incorrectly stated Global Hawk issued the Policy to El Reparto Express;

    b. Incorrectly identified El Reparto Express as the "insured";

    c. Incorrectly identified Mr. Reyna as an employee of El Reparto Express;

    d. Incorrectly stated the Policy "intended to cover bodily injury claims caused by your company to other people, not to owners or employees of El Reparto";

    e. Stated Mr. Fabelo was not a scheduled driver;

    f. Wrongly stated that since Mr. Fabelo was not a scheduled driver that was an independent basis for denial of Mr. Reyna's claim;

    g. Wrongly stated that since Mr. Fabelo was not a scheduled driver no defense would be provided to Mr. Fabelo in the underlying lawsuit.

    h. Wrongly identified three exclusions of the Policy that allegedly precluded coverage for this incident.

42. NLLG's letter did not state that the Tractor-Trailer was not a scheduled vehicle for which the Policy did not provide coverage.

43. Mr. Reyna prosecuted his claims against Mr. Fabelo, and on November 22, 2016, default judgment was properly entered against Mr. Fabelo in the amount of $1,010,007.21.

44. On or about February 6, 2017, Mr. Reyna sent to Global Hawk a copy of the Order Granting Plaintiff Carlos Reyna's Motion for Default Judgment along with a courtesy copy of the Original Petition.

45. Thereafter, Mr. Fabelo assigned Mr. Reyna the rights to pursue Mr. Fabelo's claims against Global Hawk for breach of contract, declaratory judgment, bad faith violation of the Texas Insurance Code, and breach of the duty of good faith and fair dealing as set forth herein.

### Global Hawk's No-Coverage and Additional Exclusion Assertions

46. After Plaintiff filed this cause of action, on April 26, 2017, Global Hawk filed its First Amended Answer and Affirmative Defenses (Docket no. 8), which, for the first time, expressly denied the Tractor-Trailer was covered under the Policy.

47. On August 3, 2017, Global Hawk provided Plaintiff excerpts of an email thread ("the Email Thread") between (1) Ascension employee, Ms. Stephanie Lanell Morrison, (2) Paramount General Agency's ("Paramount") employee, Salena Cavaliere, and (3) Global Century Insurance Brokers' ("GCIB") employee, Brenda Bogarin.

48. Specifically, the Email Thread reads:

   a. On December 12, 2014, Defendant Morrison submitted Mr. Reyna's Endorsement Form to Paramount. The Endorsement Form is dated December 10, 2014, and properly identifies the Tractor-Trailer involved in this incident and contains a copy of their vehicle registrations.

   b. On December 15, 2014, at 8:23 a.m., Paramount's employee, Salena Cavaliere, submitted Mr. Reyna's Endorsement Form to GCIB and requested the Endorsement Form be processed.

   c. On December 15, 2014, at 10:46 a.m., GCIB emailed Paramount stating the Endorsement Form could not be processed because there were outstanding balances due from previous endorsements. The email does not specify which party owes the outstanding balances, but it did specify there had been no changes to the Policy and the Tractor-Trailer was not covered by the Policy.

   d. On January 6, 2015, the Tractor-Trailer was added to the Policy.

# IV. CAUSES OF ACTION

### *Count 1*: Defendant Global Hawk's Breach of Contract.

49. Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

50. Mr. Fabelo was a third-party beneficiary of the Policy. The Policy's Truckers Coverage Form, Section II – Liability Coverage, (A)(1), provides:

> Who is An Insured
> The following are "insureds":
> a. You for any covered "auto".
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:…

51. Under the Policy, Mr. Fabelo was a permissive user and covered by the Policy.

52. Global Hawk's conduct constitutes a breach of the insurance contract entered into between Plaintiff Reyna and Global Hawk. Specifically, Global Hawk's wrongful refusal to provide insurance coverage over the December 15, 2014 Underlying Incident constitutes a breach of Defendant Global Hawk's obligations under the insurance contract it executed with Mr. Reyna. The breach caused damages to the third-party beneficiary Fabelo, which were properly assigned to Mr. Reyna.

### *Count 2:* Declaratory Judgment

53. Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

54. Pursuant to Federal Rule of Civil Procedure 57, Plaintiff requests the court enter judgment declaring under 28 U. S. C. § 2201 findings that Jose Fabelo was an insured driver under the subject insurance policy, that the Tractor-Trailer was covered by the subject policy, that Mr. Reyna was not an employee of El Reparto Express, that the Workers' Compensation

exclusion does not apply to Mr. Reyna, that the Employee Indemnification exclusion does not apply to Mr. Reyna, that the Fellow Employee exclusion does not apply to Mr. Reyna, that the exclusions as expressed in the subject policy do not apply, that the subject insurance policy covers the claim filed by Mr. Reyna as a result of the **December 15, 2014 Underlying Incident**, and that the subject insurance policy does not provide a basis for the denial of Mr. Reyna's claim.

*Count 3:* **Defendant Global Hawk's Breach of The Duty of Good Faith and Fair Dealing.**

55. Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

56. Plaintiff Reyna, as assignee, alleges Defendant Global Hawk's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to its insureds in insurance contracts. Defendant Global Hawk's knowingly false assertions as described above were made in bad faith, with the intention of wrongfully avoiding its obligation to honor the terms of the insurance contract it entered with Plaintiff Reyna to the benefit of Fabelo, and constitutes a breach of the duty of good faith and fair dealing.

*Count 4:* **Defendant Global Hawk's Bad Faith Violation of The Texas Insurance Code.**

57. Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

58. Plaintiff Reyna, as assignee, alleges Defendant Global Hawk's conduct constitutes violation of the Texas Insurance Code §§ 541.051, 541.060, 541.061, and 542.003. Defendant Global Hawk made untrue statements of material fact, or failed to include material facts such that other statements were rendered misleading. Specifically, Defendant Global Hawk knowingly and falsely asserted that the Policy did not provide any type of coverage over Mr. Fabelo. Further,

Defendant Global Hawk knowingly and falsely asserted the Policy did not provide coverage because of either (1) Worker's Compensation, (2) Employee Indemnification and Employer's Liability, or (3) Fellow Employee, exclusions of the Policy.

59. Moreover, Plaintiff Reyna, individually and as assignee, alleges Defendant Global Hawk failed to adopt or implement reasonable standards for the proper investigation of Mr. Reyna's claims arising under the Policy.

60. Defendant Global Hawk's misrepresentations or failures to adopt or implement reasonable investigatory standards, directly caused Plaintiff Reyna, individually and as assignee, damages for Global Hawk's failure to defend the Underlying Lawsuit.

61. Defendant Global Hawk's conduct exemplifies the very type of practices prohibited by the Texas Insurance Code.

**Count 5: Defendant Stephanie Lanell Morrison and Defendant Nihill Insurance Services, LLC dba Ascension Insurance Agency's Negligent Procurement of Insurance Coverage**

62. Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

63. Proceeding under the assumption that Defendant Global Hawk is correct and the Policy did not provide coverage for the Tractor-Trailer: Plaintiff Reyna, individually, alleges Defendant Morrison was in the course and scope of employment with Defendant Ascension when Mr. Reyna requested Ms. Morrison procure coverage for the Tractor-Trailer.

64. Plaintiff Reyna invokes the respondeat superior doctrine.

65. Defendant Ascension and Defendant Morrison agreed to procure the requested insurance coverage.

66. Defendants Ascension and Morrison had a duty to use reasonable diligence in attempting to place the requested insurance and to inform Mr. Reyna promptly if unable to do so.

67. Defendants Ascension and Morrison failed to use reasonable diligence in attempting to request the insurance Mr. Reyna requested they procure for the Tractor-Trailer.

68. Further, Defendants Ascension and Morrison failed to promptly inform Mr. Reyna of their inability to procure coverage for the Tractor-Trailer.

69. As a direct consequence of Defendants' negligence, Mr. Reyna was not aware his Global Hawk Policy did not provide coverage to the Tractor-Trailer when the Underlying Incident occurred, which directly caused Plaintiff Reyna's claims related to the Underlying Incident to not be covered by the Global Hawk Policy.

### *Count 6*: Defendant Morrison and Defendant and Defendant Nihill Insurance Services, LLC dba Ascension Insurance Agency's Bad Faith Violation of The Texas Insurance Code

70.     Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

71.     Proceeding under the assumption that Defendant Global Hawk is correct and the Policy did not provide coverage for the Tractor-Trailer: Plaintiff Reyna, individually, alleges Defendants Ascension and Morrison's conduct constitutes violation of the Texas Insurance Code, including, but not limited to Texas Insurance Code §§ 541.051, 541.060, 541.061, and 542.003. Defendants Ascension and Morrison made untrue statements of material fact, or failed to include material facts such that other statements were rendered misleading. Specifically, Defendants knowingly and falsely asserted Mr. Reyna's Global Hawk Policy provided coverage for the Tractor-Trailer prior to the December 15, 2014 Underlying Incident. Such material assertions substantially mislead Mr. Reyna to a false conclusion relating to the coverage at issue.

72.     Defendants Ascension and Morrison's misrepresentations or omissions of material facts directly caused Plaintiff Reyna's claims related to the Underlying Incident to not be covered by the Global Hawk Policy.

**Count 7: Defendant Global Hawk's Breach of PIP Contract.**

73. Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

74. Global Hawk's Texas Personal Injury Protection Endorsement ("PIP") provided Plaintiff Reyna coverage.

75. Plaintiff Reyna, individually, is the Named Insured in the PIP policy, which provides:

> A. Coverage
>
> 1. We will pay Personal Injury Protection benefits because of "bodily injury" resulting from a motor vehicle "accident" and sustained by a person "insured." Our payment will only be for "losses" or expenses incurred within three years from the date of the "accident."

76. Here, Mr. Reyna is entitled to those PIP benefits.

77. Defendant Global Hawk's conduct constitutes a breach of the insurance contract entered into between Plaintiff Reyna and Global Hawk. Specifically, Global Hawk's wrongful refusal to provide PIP insurance coverage over the December 15, 2014 Underlying Incident constitutes a breach of Defendant's obligation under the insurance contract it entered into with the Mr. Reyna. That breache caused damages to Mr. Reyna.

**Count 8: Defendant Global Hawk's Bad Faith Violation of The Texas Insurance Code.**

78. Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

79. Plaintiff Reyna, individually, alleges Defendant Global Hawk's conduct constitutes violation of the Texas Insurance Code §§ 541.051, 541.060, 541.061, and 542.003. Defendant Global Hawk made untrue statements of material fact, or failed to include material facts such that other statements were rendered misleading. Specifically, Defendant Global Hawk knowingly and

falsely asserted that the Policy provided coverage over the Tractor-Trailer and Mr. Fabelo on December 15, 2014.

80. Additionally, Defendant Global Hawk omitted material facts. Specifically, Defendant Global Hawk failed to state the Policy did not provide coverage over the Tractor-Trailer on December 15, 2014. Such material assertions substantially mislead Mr. Reyna to a false conclusion relating to the coverage of the Underlying Incident.

81. Also, Defendant Global Hawk omitted material facts. Specifically, Defendant Global Hawk failed to state the Policy provided PIP coverage over the Underlying Incident.

82. Moreover, Plaintiff Reyna, individually, alleges Defendant Global Hawk failed to adopt or implement reasonable standards for the proper investigation of Mr. Reyna's claims arising under the Policy.

83. Defendant Global Hawk's misrepresentations, omissions of material facts, or failures to adopt or implement reasonable investigatory standards, directly caused Plaintiff Reyna, individually, loss of benefits and to lose his opportunity to file a cause of action against his insurance agent, Defendant Morrison, and his insurance agency, Defendant Ascension, since they failed to procure coverage, as outlined above, for the Tractor-Trailer and Mr. Fabelo and misrepresented, as outlined above, they procured such coverages.

84. Further, Defendant Global Hawk's misrepresentations, omissions of material facts, or failures to adopt or implement reasonable investigatory standards, directly caused Plaintiff Reyna, individually, to lose the benefits and to lose his opportunity to file a cause of action against Defendants Morrison and Ascension, since they failed to procure coverage.

85. Defendant Global Hawk's conduct exemplifies the very type of practices prohibited by the Texas Insurance Code.

### *Count 9:* **Defendant Global Hawk's Deceptive Trade Practices Act Violations.**

86. Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

87. Plaintiff Reyna purchased the Policy from Defendant Global Hawk. After Plaintiff Reyna was injured in the Underlying Incident, he made a claim against the Policy that he purchased from Global Hawk seeking all benefits afforded under the Policy.

### *Count 9A*

88. Thereafter, Defendant Global Hawk misrepresented the Policy did not provide coverage because Mr. Fabelo was not a scheduled driver. That was an unconscionable action or practice.

89. Defendant Global Hawk's unconscionable action or practice should have been glaringly noticeable since the Policy plainly identifies Mr. Fabelo as an "insured" permissive user.

90. Defendant Global Hawk's misrepresentation that the Policy did not provide coverage because Mr. Fabelo was not a scheduled driver directly caused Plaintiff Reyna, as assignee, damages for Global Hawk's failure to defend the Underlying Lawsuit.

### *Count 9B*

91. Further, Defendant Global Hawk misrepresented the Policy's exclusions precluded coverage over the Underlying Incident. That was an unconscionable action or practice.

92. Defendant Global Hawk's unconscionable action or practice should have been glaringly noticeable since it citied pertinent caselaw establishing Mr. Reyna was not an employee.

93. Defendant Global Hawk's misrepresentation that the Policy's exclusions precluded coverage directly caused Plaintiff Reyna, as assignee, damages for Global Hawk's failure to defend the Underlying Lawsuit, and individually the loss of PIP coverage benefits.

*Count 9C*

94. Further, Defendant Global Hawk misrepresented the Policy provided coverage over the Tractor-Trailer. That was an unconscionable action or practice.

95. Defendant Global Hawk's unconscionable action or practice should have been glaringly noticeable if, as it now alleges, the Policy never actually covered the Tractor-Trailer.

96. Defendant Global Hawk's misrepresentation that the Policy covered the Tractor-Trailer directly caused Plaintiff Reyna to lose his opportunity to file a cause of action against his insurance agent, Defendant Morrison, and his insurance agency, Defendant Ascension, since they failed to procure the coverage and misrepresented they procured such coverages.

*Count 9D*

97. Further, based upon Defendant Global Hawk's violations of Texas Insurance Code §§ 541.051, 541.060, and 541.061, it violated provisions of the Deceptive Trade Practices Act.

## V. <u>DAMAGES</u>

98. Plaintiff will demonstrate each of the aforementioned acts constitute the proximate and/or producing causes of the damages sustained by Plaintiff individually and as assignee. These damages are a direct result of Defendant Global Hawk's denial of coverage and Defendants' knowingly false statements related to Plaintiff's coverage and claims, and are in direct violation of the subject insurance policy and the laws of the State of Texas.

99. For breach of contract, Plaintiff is entitled to recover the benefits of his bargain, which is the amount of his claim, and pre and postjudgment interest, court costs, and attorneys' fees.

100.     For negligence, Plaintiff is entitled to recover the benefits of his bargain, which is the amount of his claim, together with including pre and postjudgment interest and court costs.

101.	For noncompliance with the Texas Insurance Code, Plaintiff is entitled to recover actual damages, which include the loss of the benefits that should have been paid pursuant to the subject insurance policy, mental anguish, court costs, and attorneys' fees.

102.	For Defendant's knowingly false statements to Plaintiff regarding the scope of the coverage required by its own insurance policy, Plaintiff is entitled to treble damages. TEX. INS. CODE § 541.152.

103.	For noncompliance with the Texas Insurance Code, Plaintiff is entitled to recover the amount of his claim as well as eighteen percent interest per annum on the amount of such claim as damages, together with attorneys' fees. TEX. INS. CODE § 541.060.

104.	For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the Defendant's breach of that duty, such as additional costs, economic hardship, exemplary damages, and damages for emotional distress.

105.	For violations of the Deceptive Trade Practices Act, Plaintiff is entitled to economic damages, including pre and postjudgment interest, court costs, and attorney's fees.

106.	For intentional violations of the Deceptive Trade Practices Act, Plaintiff is further entitled to mental-anguish damages and additional damages up to three times the amount of economic and mental-anguish damages.

107.	For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorneys whose names are subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals.

## VI.  CONDITIONS PRECEDENT

108.     All conditions precedent have occurred, were excused or were waived prior to the filing of this suit.

## VII.  JURY DEMAND

109.     Plaintiff demands a trial by jury. Plaintiff has or will deposit any required fee with the clerk of court.

## VIII.  PRAYER

Plaintiff prays that Defendants be cited according to law to appear and answer herein, and that upon final trial, Plaintiff have judgment against Defendants as requested in their Declaratory Judgment Action, and as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure as to actual damages and treble damages under the Texas Insurance Code or the Deceptive Trade Practice Act, as may be found.  In addition, Plaintiff requests the award of attorneys' fees for the preparation and trial, and any appeal of this case, for all costs of Court expended on his behalf, for prejudgment and post-judgment interest as allowed by law, and for any other further relief, either in law or in equity, to which plaintiff may show himself justly entitled.

Respectfully submitted,

THE MEYERSON LAW FIRM, P.C.
2224 Walsh Tarlton Lane, Suite 120
AustinTexas 78746
P:  (512) 330-9001 │ F: (512) 330-9005
E:  jeffm@meyersonfirm.com
E:  tomasa@meyersonfirm.com

By:  _____
JEFF M. MEYERSON, TSB No. 00788051
TOMAS E. ALARCON, TSB No. 24098787
Attorneys for Plaintiff

# Exhibit A

2575 Collier Canyon Road
Livermore, CA 94551
www.ghins.com


**Global Century**
Insurance Brokers, Inc.

925.262.1900 ph
925.262.1901 fax
License # 0E52042

*"Welcome to Global Century Insurance Brokerage"*

Thank you for allowing us to provide insurance coverage for your commercial operation. We recognize that business in America is faced with many automobile safety issues. Our staff of insurance professionals is ready to assist you with all of your insurance needs and vehicle safety issues.

We can offer assistance with safety programs, such as Department of Transportation Compliance and Accident Prevention, Sound Fleet Safety, and vehicle maintenance programs and schedules. These are the cornerstones of vehicle safety that will assist in reducing the number and severity of accidents, and thereby result in lower insurance costs for your business.

Please read your policy and accompanying documents carefully. Pay particular attention to the exclusions, limits, vehicle schedule, driver schedule and restrictions and radius restrictions. You must notify us immediately if you add or delete equipment and/or drivers on your policy. You will receive written confirmation of the changes; it is your obligation as a business owner to ensure that the changes have been made. Verbal requests for changes or confirmation is not sufficient or binding on our company or your insurance company.

If you finance your premium, it is imperative that you make timely payments. Your failure to do so may result in cancellation of your policy. If cancelled for non-payment of premium, your insurance company may not reinstate your policy if you tender a late payment. It is not our responsibility to ensure that your payments are timely or current. Please note, if the policy is reinstated, there is a reinstatement fee of Fifty Dollars ($50) and Fifty Dollars ($50) for each additional filing on the policy.

You as the Retail Broker are responsible to give a hard copy of the written policy to the insured. We, Global Century, will provide You, Retail Broker, with a digital copy of the policy, including endorsements, policy forms and declaration page, by e-mail. It will be your responsibility to provide the insured with a written copy of the policy. If you inform us, Global Century, that you are unable to provide the insured with a written policy, we will send a copy by mail to the address of the Named Insured on the application and declarations page.

Renewal of your policy is not automatic. You must contact us prior to the expiration date of your policy if you wish to continue your coverage. You must submit a renewal application and obtain and accept an offer to renew for the premium quoted.

If you have any questions regarding claims or need claims assistance, please call 1-800-547-1644, 24 hours a day, seven days a week. We are here for you. Once again, we thank you for your business and wish you continued success.

Sincerely,

Global Century Insurance Brokerage and Staff

# Global Hawk Insurance Co (RRG)



www.ghins.com

*We appreciate your business and want to thank you for choosing*
## Global Hawk Insurance Company.



# GLOBAL HAWK INSURANCE COMPANY (RRG)

## Schedule of Forms and Endorsements

**POLICY NO.** TXJ114105

| FORM NAME | EDITION DATE | FORM DESCRIPTION |
|---|---|---|
| GHI-41 | | Common policy declarations |
| CADS14 | 1001 | Trucker Declarations |
| GHI-20 | | Driver Schedule |
| GHI-6 | | Driver/Owner exclusion supplement form |
| IL0017 | 1098 | Common Policy Conditions |
| GHI-21 | | Signatures |
| CA2109 | 0513 | Texas Uninsured / Underinsured Motorist Coverage |
| CA2264 | | Texas Personal Injury Protection Endorsement |
| CA0301 | 1293 | Deductible Liability Coverage |
| IL0021 | 0498 | Nuclear Energy Liability Exclusion Endorsement |
| GHI-24 | | Policyholder Disclosure of Terrorism Premium |
| GHI-25 | | Endorsement Territorial Limitation |
| CA0012 | 1001 | Truckers Coverage Form |
| GHI-26 | | Changes |
| GHI-27 | | Punitive, Exemplary and Extra Contractual Damage Exclusion |
| GHI-28 | | Limits of Future Coverage |
| GHI-43 | | Pollution Liability Coverage-Changes |
| GHI-42 | | Radius of Operation- Limits |
| GHI-7 | | Loss of Use Reimbursement |
| GHI-15 | | Limitation- Risk Retention Group |
| GHI-16 | | Limitation of Use Endorsement- Limited to Autos |
| GHI-44 | | Inspection Notice |
| GHI-46 | | Towing Reimbursement |
| GHI-47 | | Rental Vehicle Reimbursement |
| GHI-30 | | Service of Suit Clause |
| GHI-29 | | Privacy Notice |
| GHI-45 | | General Proxy |
| GHI-18 | | Endorsement - Single, Double, Triple, or other trailers |
| GHI-32 | | Reservation of Rights Endorsement |
| GHI-33 | | Cancellation and Nonrenewal |
| GHI-49 | | Membership Term and Acknowledgement |
| GHI-50 | | Delayed Reporting Deductible |
| GHI-51 | | Notice of Loss Condition |
| GHI-52 | | Occupant Hazard Exclusion |
| GHI-53 | | Scheduled Driver Endorsement |
| GHI-54 | | Permissive User Limitation Endorsement |
| GHI-55 | | Single Combined Aggregate |
| GHI-56 | | Single Coverage Only |
| GHI-57 | | Limitation of Covered Vehicle Endorsement |
| GHI-58 | | Revised Non Trucker Liability Exclusion |
| FORM E-1 | | General change endorsement |
| GHI-59 | | Policy Complies with FMCSA Terms Governed by FMCSA |

Application and supporting documents included

**GHI-39**



# GLOBAL HAWK INSURANCE COMPANY
## (RRG)
### LIVERMORE, CA

## COMMON POLICY DECLARATIONS

POLICY NUMBER: TXJ114105      RENEWAL OF: TXJ112599

**NAMED INSURED AND MAILING ADDRESS**
Carlos A Reyna DBA: El Reparto Express
1506 Rutland Dr
Austin, TX, 78758

**Policy Period:**   From : 11/11/2014    To   11/11/2015    6:00PM. Standard Time at your mailing address shown above
Business Description:

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

|  | Premium |
|---|---|
| Truckers Coverage Part | $6,771 |
| Business Auto Coverage Part | |
| | |
| | |
| Filing/ Inspection Fee: | $50 |
| Policy Fee: | $200 |
| | $7,021 |

Forms applicable to all Coverage Parts:

Countersigned: _____11/11/2014_____ By _____
           (DATE)         (AUTHORIZED REPRESENTATIVE)

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORMS(s) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY

**GHI-41**

**ITEM THREE**
**SCHEDULE OF COVERED AUTOS YOU OWN**

| Covered Auto No. | Description | | Purchased | | Territory |
|---|---|---|---|---|---|
| | **Year, Model, Trade Name, Body Type Serial Number (S) Vehicle Identification Number (VIN)** | | **Original Cost New** | **Actual Cost & NEW (N) USED (U)** | **Town & State Where The Covered Auto Will Be Principally Garaged** |
| 1 | 2002 KENW Tractor VIN: 1XKADB9X02J885581 | | | | Austin, TX |
| 2 | 2012 CTS Trailer VIN: 5TU11402XCS001037 (While attached to scheduled auto) | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |

| Covered Auto No. | Classification | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | **Radius Of Operation** | **Business Use s=service r=retail c=commercial** | **Size GVW, GCW Or Vehicle Seating Capacity** | **Age Group** | **Primary Rating Factor** | | **Secondary Rating Factor** | **Code** | **EXCEPT For Towing, All Physical Damage Losses Payable To You And The Loss Payee Named Below As Interests May Appear At the Time Of The Loss** |
| | | | | | **Liab.** | **Phy. Dam.** | | | |
| 1 | 100 Miles-TX Only. | C | | | | | | | |
| 2 | 100 Miles-TX Only. | C | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |

**CA DS 14 10 01**          © ISO Properties, Inc., 2000          **Page 3 of 6**

**ITEM THREE**
**SCHEDULE OF COVERED AUTOS YOU OWN (Cont'd)**

| Covered Auto No. | COVERAGES - PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | LIABILITY | | PERSONAL INJURY PROTECTION | | ADDED P.I.P. | PROPERTY PROTECTION (Michigan Only) | | AUTO MEDICAL PAYMENTS | |
| | Limit | Premium | Limit Stated In Each P.I.P End. Minus Deductible Shown Below | Premium | Limit Stated In Each Added P.I.P. End. Premium | Limit Stated In P.P.I. End. Minus Deductible Shown Below | Premium | Limit | Premium |
| 1 | $500,000 | S 6,771 | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| Total | | S 6,771 | | | | | | | |

| Covered Auto No. | COVERAGES - PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.) | | | | | | | TOWING AND LABOUR |
|---|---|---|---|---|---|---|---|---|
| | COMPREHENSIVE | | SPECIFIED CAUSES OF LOSS | | | COLLISON | | |
| | Limit Stated In ITEM TWO Minus Deductible Shown Below | Premium | Limit Stated In ITEM TWO Minus Deductible Shown Below | Premium | Limit Stated In ITEM TWO Minus Deductible Shown Below | Premium | Limit Per Disablement | Premium |
| 1 | | | | | | | | |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |

© ISO Properties, Inc., 2000      **CA DS 14 10 01**

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS**

| LIABILITY COVERAGE – RATING BASIS, COST OF HIRE – AUTOS USED IN YOUR TRUCKING OPERATIONS | | |
|---|---|---|
| **ESTIMATED COST OF HIRE** | **RATE PER EACH $100 COST OF HIRE** | **TOTAL ESTIMATED PREMIUM** |
| $ | $ | $ |

| LIABILITY COVERAGE – RATING BASIS, COST OF HIRE – AUTOS NOT USED IN YOUR TRUCKING OPERATIONS | | | | |
|---|---|---|---|---|
| **STATE** | **ESTIMATED COST OF HIRE FOR EACH STATE** | **RATE PER EACH $100 COST OF HIRE** | **FACTOR (If Liability Coverage is Primary)** | **PREMIUM** |
| | $ | $ | $ | $ |
| | | | **TOTAL PREMIUM** | $ |

**PHYSICAL DAMAGE COVERAGE**

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | $ | $ | $ |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | $ | $ | $ |
| COLLISION | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO. | $ | $ | $ |
| | | | **TOTAL PREMIUM** | $ |

Cost of Hire means:

(a) The total dollar amount of costs you incurred for the hire of automobiles (includes trailers and semitrailers), and if not included therein,

(b) The total remunerations of all operators and drivers helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and,

(c) The total dollar amount of any other costs (i.e., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the insured, paid to the lessor or owner, or paid to others.

**ITEM FIVE**

**SCHEDULE FOR NON-OWNERSHIP LIABILITY**

| RATING BASIS | NUMBER | PREMIUM |
|---|---|---|
| Number Of Employees | | $ |
| Number Of Partners | | $ |
| TOTAL | $ |

**ITEM SIX**

**TRAILER INTERCHANGE COVERAGE**

| COVERAGES | LIMIT OF INSURANCE | DAILY RATE | ESTIMATED PREMIUM |
|---|---|---|---|
| COMPREHENSIVE | STATED IN ITEM TWO | $ | $ |
| SPECIFIED CAUSES OF LOSS | | $ | $ |
| COLLISION | | $ | $ |
| | | TOTAL PREMIUM | $ |

**ITEM SEVEN**

**SCHEDULE FOR GROSS RECEIPTS RATING BASIS – LIABILITY COVERAGE**

| ESTIMATED YEARLY Gross Receipts | RATES Per $100 Of Gross Receipts | | PREMIUMS | |
|---|---|---|---|---|
| | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS |
| $ | $ | $ | $ | $ |
| $ | $ | $ | $ | $ |
| $ | $ | $ | $ | $ |
| $ | $ | $ | $ | $ |
| | | TOTAL PREMIUMS | $ | $ |
| | | MINIMUM PREMIUMS | $ | $ |

When used as a premium basis:

Gross Receipts means the total amount to which you are entitled for shipping or transporting property during the policy period regardless of whether you or any other carrier originate the shipment or transportation. "Gross Receipts" includes the total amount received from renting equipment, with or without drivers, to anyone who is not a "trucker" and 15% of the total amount received from renting any equipment to any "trucker". Gross Receipts does not include:

**A.** Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

**B.** Advertising Revenue.

**C.** Taxes which you collect as a separate item and remit directly to a governmental division.

**D.** C.O.D. collections for cost of mail or merchandise including collection fees.

**E.** Warehouse storage fees.

© ISO Properties, Inc., 2000     **CA DS 14 10 01**

# DRIVER SCHEDULE

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

The following individuals are operators under this policy.
Any changes during the policy period should be endorsed.

| # | Driver Name | Date of Birth | License Number | State License | Date Hired | Date Terminated |
|---|---|---|---|---|---|---|
| 1 | Emilio Pardo Beltran | 11/19/1985 | 34333425 | TX | | |
| 2 | Alfredo Padilla Ane | 07/22/1962 | 00219407 | TX | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |

# DRIVER / OWNER EXCLUSION SUPPLEMENT FORM

Carlos A Reyna DBA: El Reparto Express _____
(Named Insured/DBA)

It is hereby understood and agreed that all coverages and our obligation to defend under this policy shall not apply nor accrue to the benefit of any INSURED or any third party claimant while any VEHICLE or MOBILE EQUIPMENT described in the policy or any other VEHICLE or MOBILE EQUIPMENT, to which the terms of the policy are extended, is being driven, used or operated by any person designated below.

The driver exclusion shall be binding upon every INSURED to whom such policy or endorsements provisions apply while such policy is in force and shall continue to be binding with respect to any continuation, renewal or replacement of such policy by the Named Insured or with respect to any reinstatement of such policy within 30 days of any lapse thereof  This DRIVER EXCLUSION provision shall conform to State statutes and laws.

| 1. Name of Person Excluded | | | Lic Number |
|---|---|---|---|
| Carlos | | Reyna | 35369888 |
| (first) | (middle) | (last) | |

| Date of Birth | S.S.N. | Reason For Exclusion |
|---|---|---|
| 02/10/1986 | | Does not have a CDL |

GHI-6

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

## **SIGNATURES**

The only signatures applicable to this policy are those representing Global Hawk Insurance Company, RRG.

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

IN WITNESS WHEREOF, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

*Jarbir Singh Nardi*
**PRESIDENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**
# TEXAS UNINSURED/UNDERINSURED MOTORISTS COVERAGE

For a "covered auto" licensed or principally garaged in, or "garage operations" conducted in, Texas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Carlos A Reyna DBA: El Reparto Express |
| **Endorsement Effective Date:** 11/11/2014 |

## SCHEDULE

| Limit Of Insurance | |
|---|---|
| **$30,000 / $60,000** | **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured" or "property damage" caused by an "accident". The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if **a.** or **b.** below applies:

   a. The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of the vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle", and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us. If we and the Named Insured do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue will be on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are insureds:

   a. The Named Insured and any "family member".

   b. Any other person "occupying" a "covered auto".

   c. Any person or organization for damages that person or organization is entitled to recover because of "bodily injury" sustained by a person described in **a.** or **b.** above.

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. The Named Insured for "property damage" only.

   b. Any person "occupying" a "covered auto".

   c. Any person or organization for damages that person or organization is entitled to recover because of "bodily injury" sustained by a person described in **b.** above.

## C. Exclusions

1. We do not provide Uninsured/Underinsured Motorists Insurance:

   a. For "bodily injury" sustained by:

      (1) An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a "covered auto" for Uninsured/Underinsured Motorists Coverage under this coverage form;

      (2) Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a "covered auto" for Uninsured/Underinsured Motorists Coverage under this coverage form; or

      (3) Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured/Underinsured Motorists Coverage on a primary basis under any other coverage form or policy.

   b. For any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an owner or operator of a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph **A.2.b.**

   c. For any person for the first $250 of the amount of damage to the property of that person as the result of any one "accident".

   d. For the use of a vehicle without a reasonable belief that the person using the vehicle is entitled to do so. This exclusion does not apply to an individual Named Insured or a "family member" while using a "covered auto".

   e. For any person for "bodily injury" or "property damage" resulting from the intentional acts of that person.

2. This coverage shall not apply directly or indirectly to benefit:

   a. Any insurer or self-insurer under any workers' compensation, disability or similar law.

   b. Any insurer of property.

## D. Limit Of Insurance

1. Regardless of the number of "covered autos", "insureds", policies or bonds applicable, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured/Underinsured Motorists Coverage shown in the Schedule or Declarations. Subject to this maximum, our limit of liability will be the lesser of:

   a. The difference between the amount of a covered "insured's" damages for "bodily injury" or "property damage" and the amount paid or payable to that covered "insured" for such damages, by or on behalf of persons or organizations who may be legally responsible; or

   b. The applicable limit of liability for this coverage.

2. In order to avoid insurance benefits payments in excess of actual damages sustained, subject to only the limits set out in the Schedule or Declarations and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any:

   a. Workers' compensation, disability benefits or similar law;

   b. Automobile Medical Payments Coverage; or

   c. Personal Injury Protection Coverage.

3. Any payment under this coverage to or for an "insured" will reduce any amount that "insured" is entitled to recover for the same damages under this policy's Liability Coverage.

**4. Special Provisions For Property Damage**

For any "property damage" "loss" to which the Physical Damage Coverage of this policy (or similar coverage from another policy) and this coverage both apply, the Named Insured may choose the coverage from which damages will be paid. Such Named Insured may recover under both coverages, but only if:

**a.** Neither one by itself is sufficient to cover the "loss";

**b.** The Named Insured pays the higher deductible amount (but the Named Insured does not have to pay both deductibles); and

**c.** The Named Insured will not recover more than the actual damages.

**E. Changes In Conditions**

The Conditions of the policy are changed for Uninsured/Underinsured Motorists Insurance as follows:

**1.** The reference in **Other Insurance** Condition in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" is replaced by the following:

If there is other applicable similar insurance, we will pay only our share of the "loss". Our share is the proportion that our Limit of Insurance bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible insurance.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved.

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**c.** Take reasonable steps after "loss" to protect the "covered auto" and its equipment from further "loss". We will pay all reasonable expenses incurred to do this.

**d.** Permit us to inspect and appraise the damaged property before its repair or disposal.

**e.** Promptly notify us in writing of a tentative settlement between an "insured" and the insurer of the vehicle described in Paragraph

**d.** of the definition of "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle.

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights under this provision do not apply with respect to a tentative settlement between an "insured" and the insurer of an owner or operator of a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle" if we:

**a.** Have been given written notice of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle"; and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount an "insured" is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

**b.** We also have the right to recover the advanced payment.

**4.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding. However, at any time prior to the arbitrators' decision, either party may revoke the agreement to arbitrate the matter.

**F. Additional Definitions**

The following are added to the **Definitions** Section and have special meaning for Uninsured/Underinsured Motorists Insurance:

**1.** "Covered auto" means an "auto":

**a.** Owned or leased by the Named Insured; or

**b.** While temporarily used as a substitute for an owned "covered auto" that has been withdrawn from normal use because of its breakdown, repair, servicing, "loss" or destruction.

Liability coverage of this policy must apply to the "covered auto".

"Covered auto" includes "autos" (described in **a.** or **b.** above) for which Uninsured/Underinsured Motorists Insurance has not been rejected in writing.

**2.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

**3.** "Occupying" means in, upon, getting in, on, out or off

**4.** "Property damage" means injury to or "loss" of use or destruction of:

**a.** A "covered auto";

**b.** Property owned by the Named Insured or any "family member" of an individual Named Insured while contained in a "covered auto";

**c.** Property owned by any other person "occupying" the "covered auto" while contained in the "covered auto"; and

**d.** Any property owned by the Named Insured or "family member" of an individual Named Insured while contained in any "auto" not owned, but being operated, by such individual Named Insured or any "family member" of the individual Named Insured.

**5.** "Uninsured motor vehicle" means a land motor vehicle or "trailer" of any type:

**a.** To which no liability bond or policy applies at the time of the "accident".

**b.** Which is a hit-and-run vehicle whose operator or owner cannot be identified. The vehicle must hit an "insured", a "covered auto" or a vehicle an "insured" is "occupying".

**c.** To which a liability bond or policy applies at the time of the "accident", but the bonding or insuring company denies coverage or is or becomes insolvent.

**d.** Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident, but its limit of liability either:

**(1)** Is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages; or

**(2)** Has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

**a.** Owned by or furnished or available for the regular use of the Named Insured or a "family member" of an individual Named Insured;

**b.** Owned or operated by a self-insurer under an applicable motor vehicle law;

c. Owned by any governmental body unless the operator of the vehicle is uninsured and there is no statute imposing liability for damage because of "bodily injury" or "property damage" on the governmental body for an amount not less than the Limit of Insurance for this coverage;

d. Operated on rails or crawler treads;

e. Designed mainly for use off public roads while not on public roads; and

f. While located for use as a residence or premises;

 © Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS PERSONAL INJURY PROTECTION ENDORSEMENT

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Texas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## SCHEDULE

| Limit Of Insurance (Each Insured) | | Premium | |
|---|---|---|---|
| $ | 2,500 | $ | 750 |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |
| **Description Of Covered Autos** (check appropriate box): | | | |
| | Any "auto" owned by you. | | |
| | Any private passenger "auto" owned by you. | | |
| | Any motor vehicle to which are attached dealer's license plates issued to you. | | |
| | Any motor vehicle designated in the Declarations of the policy by the letters P.I.P. and a motor vehicle ownership of which is acquired during the policy period by you as a replacement therefor. | | |
| x | Scheduled Autos Only. | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

**A. Coverage**

We will pay Personal Injury Protection benefits because of "bodily injury" resulting from a motor vehicle "accident" and sustained by a person "insured". Our payment will only be for "losses" or expenses incurred within three years from the date of the "accident".

Personal Injury Protection benefits consist of:

**1.** Necessary expenses for medical and funeral services.

**2.** 80% of an "insured's" loss of income from employment. These benefits apply only if, at the time of the "accident", the "insured":

**a.** Was an income producer; and

**b.** Was in an occupational status.

These benefits do not apply to any "loss" after the "insured" dies.

Loss of income is the difference between:

**a.** Income which would have been earned had the "insured" not been injured; and

**b.** The amount of income actually received from employment during the period of disability.

If the income being earned as of the date of the "accident" is a salary or fixed remuneration, it shall be used in determining the amount of income which would have been earned. Otherwise, the average monthly income earned during the period (not more than 12 months) preceding the "accident" shall be used.

**3.** Reasonable expenses incurred for obtaining services. These services must replace those an "insured" would normally have performed:

**a.** Without pay;

**b.** During a period of disability; and

**c.** For the care and maintenance of the family or household.

These benefits apply only if, at the time of the "accident", the "insured":

**a.** Was not an income producer; and

**b.** Was not in an occupational status.

These benefits do not apply to any "loss" after the "insured" dies.

## B. Who Is An Insured

**1.** You or any "family member" while "occupying" or when struck by any "auto".

**2.** Anyone else "occupying" a "covered auto" with your permission.

## C. Exclusions

We will not provide Personal Injury Protection Coverage for any person for "bodily injury" sustained:

**1.** In an "accident" caused intentionally by that person.

**2.** By that person while in the commission of a felony.

**3.** By that person while attempting to elude arrest by a law enforcement official.

**4.** While "occupying" or when struck by, any motor vehicle (other than a "covered auto") which is owned by you.

**5.** By a "family member" while "occupying" or when struck by any motor vehicle (other than a "covered auto") which is owned by a "family member".

## D. Limit Of Insurance

Regardless of the number of owned "covered autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" in any one "accident" is the limit of Personal Injury Protection shown in the Schedule or in the Declarations.

## E. Changes In Conditions

**1.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

However, our rights only apply against a person causing or contributing to the "accident" if, on the date of the "loss", the minimum limits required by Texas law have not been established for a motor vehicle involved in the "accident" and operated by that person.

**2.** The reference in the **Other Insurance** Condition in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" is replaced by the following:

If there is other Personal Injury Protection Insurance, we will pay only our share. Our share is the proportion that our Limit Of Insurance bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible Personal Injury Protection Insurance.

**3.** The following Conditions are added:

**a. Payment Provision**

Loss Payments. Benefits are payable:

**(1)** Not more frequently than every two weeks; and

**(2)** Within 30 days after satisfactory proof of claim is received.

**b. Assignment Of Benefits**

Payments for medical benefits will be paid directly to a physician or other health care provider if we receive a written assignment signed by the covered person to whom such benefits are payable.

## F. Additional Definitions

The following are added to the **Definitions** Section and have special meaning for Personal Injury Protection:

**1.** "Covered auto" means an "auto":

**a.** Owned or leased by you; or

**b.** While temporarily used as a substitute for an owned "covered auto" that has been withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

Liability coverage of this policy must apply to the "covered auto".

"Covered auto" includes "autos" (described in Paragraphs **a.** and **b.** above) for which Personal Injury Protection coverage has not been rejected in writing.

**2.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Endorsement Effective: 11/11/2014 | |
| Named Insured: Carlos A Reyna DBA: El Reparto Express | Countersigned By |

(Authorized Representative)

## SCHEDULE

| | | | |
|---|---|---|---|
| Liability Deductible: | $ | 1,000 | Per "Accident" |
| "Bodily Injury" Deductible: | $ | | Per Person |
| | $ | | Per "Accident" |
| "Property Damage" Deductible | $ | | Per "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

LIABILITY COVERAGE is changed as follows:

**A. LIABILITY COVERAGE DEDUCTIBLE**

The damages caused in any one "accident" that would otherwise be payable under LIABILITY COVERAGE will be reduced by the Liability Deductible shown in the Schedule prior to the application of the LIMIT OF INSURANCE provision.

**B. BODILY INJURY LIABILITY COVERAGE DEDUCTIBLES**

**1. Per Person**

The damages that would otherwise be payable under LIABILITY COVERAGE FOR "bodily injury" sustained by any one person, in any one "accident", will be reduced by the "Bodily Injury" Per Person Deductible shown in the Schedule prior to the application of the LIMIT OF INSURANCE provision.

**2. Per Accident**

The damages that would otherwise be payable under LIABILITY COVERAGE for all "bodily injury" caused in any one "accident" will be reduced by the "Bodily Injury" Per "Accident" Deductible shown in the Schedule prior to the application of the LIMIT OF INSURANCE provision.

**C. PROPERTY DAMAGE LIABILITY COVERAGE DEDUCTIBLE**

The damages that would otherwise be payable under LIABILITY COVERAGE FOR "property damage" caused in any one "accident" will be reduced by the "Property Damage" Per "Accident" Deductible shown in the Schedule prior to the application of the LIMIT OF INSURANCE provision.

**D. OUR RIGHT TO REIMBURSEMENT**

To settle any claim or "suit" we may pay all or any part of any deductible shown in the Schedule. If this happens, you must reimburse us for the deductible or the part of the deductible we paid.

 Copyright, Insurance Services Office, Inc., 1993

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

 Copyright, Insurance Services Office, Inc., 1997

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

- **(a)** Any "nuclear reactor";
- **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";
- **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
- **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997     **IL 00 21 04 98**   ☐

# POLICYHOLDER DISCLOSURE OF TERRORISM PREMIUM

Date: 11/11/2014

**Insured Name/Address**

Carlos A Reyna DBA: El Reparto Express
1506 Rutland Dr
Austin, TX, 78758

**Agent Name/Address**

GLOBAL HAWK INSURANCE COMPANY, RRG
2575 COLLIER CANYON ROAD
LIVERMORE CA 94551

RE: Policy #   TXJ114105                          Effective Date:   NO COVERAGE
PREMIUM AMOUNT DUE FOR TERRORISM COVERAGE: **NO COVERAGE**

Dear Policyholder,

The Terrorism Risk Insurance Act of 2002 establishes a program within the Department of Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign persons or foreign interest to coerce the government or population of the United States.

In accordance with the Terrorism Risk Insurance Act of 2002 and Terrorism Risk Insurance Program Reauthorization Act of 2007, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an act of terrorism committed by an individual(s) acting on behalf of a foreign person or foreign interest. The policy's other provisions will still apply to such an act.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT, DEPARTMENT OF TREASURY, UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THIS FORMULA, THE UNITED STATES PAYS 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

GHI-24

| | |
|---|---|
| **Insurance Company:** | **GLOBAL HAWK INSURANCE COMPANY, RRG** |
| **Named Insured:** | **Carlos A Reyna DBA: El Reparto Express** |
| **Policy Number:** | **TXJ114105** |
| **Effective Date:** | **11/11/2014** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TERRITORIAL LIMITATION

It is agreed that the insurance afforded by this policy shall not apply in the event of a claim arising from an accident which occurs while a Covered Auto is being operated outside the boundaries of the State(s) of **100 Miles-TX Only.**.

_____

Authorized Representative

# TRUCKERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 41 | Any "Autos" | |
| 42 | Owned "Autos" Only | Only the "autos" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 43 | Owned Commercial "Autos" Only | Only those trucks, tractors and "trailers" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins. |
| 44 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the No-Fault law in the state where they are licensed or principally garaged. |
| 45 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 46 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 47 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households. |
| 48 | "Trailers" In Your Possession Under A Written Trailer Or Equipment Interchange Agreement | Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession. |

# TRUCKERS DECLARATIONS

**POLICY NO.:** TXJ114105

**GLOBAL HAWK INSURANCE COMPANY (RRG)**
**2575 COLLIER CANYON ROAD**
**LIVERMORE CA 94551**

**GLOBAL CENTURY INSURANCE BROKERS, INC.**
**2575 COLLIER CANYON ROAD**
**LIVERMORE CA 94551**

**ITEM ONE**
**NAMED INSURED:** Carlos A Reyna DBA: El Reparto Express
**MAILING ADDRESS:** 1506 Rutland Dr
Austin, TX, 78758

**POLICY PERIOD:** From 11/11/2014 to 11/11/2015
at 6:00PM. Standard Time at your mailing address shown above.

**PREVIOUS POLICY NUMBER:** TXJ112599

**FORM OF BUSINESS:**

|   | CORPORATION |   | PARTNERSHIP |   | LIMITED LIABILITY COMPANY |
|---|---|---|---|---|---|
| X | INDIVIDUAL |   | Other |   |   |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

Premium shown is payable: $6,771 at inception.

| AUDIT PERIOD (IF APPLICABLE) | X | ANNUALLY |   | SEMI ANNUALLY |   | QUARTERLY |   | MONTHLY |   | Other |
|---|---|---|---|---|---|---|---|---|---|---|

**ENDORSEMENTS ATTACHED TO THIS POLICY:**
   IL 00 17 – Common Policy Conditions (IL 01 46 in Washington)
   IL 00 21 – Broad Form Nuclear Exclusion (Not Applicable in New York)

COUNTERSIGNED   11/11/2014   BY   _Jasbir Singh Thandi_
                (Date)              (Authorized Representative)

**NOTE**
OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE
AT THE COMPANY'S OPTION.

**ITEM TWO**

**SCHEDULE OF COVERAGES AND COVERED AUTOS**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by entry of one or more of the symbols from the Covered Autos Section of the Truckers Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the Covered Autos Section of the Truckers Coverage Form shows which autos are covered autos.) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 46 | $500,000 | $ 6,771 |
| PERSONAL INJURY PROTECTION (or equivalent No-Fault Coverage) | | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS $ DED. | $ |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No-Fault Coverage) | 46 | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT | $ Included |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS $ DED. FOR EACH ACCIDENT. | $ |
| MEDICAL PAYMENTS | | $ | $ |
| UNINSURED MOTORISTS | 46 | $30,000 / $60,000 | $ Included |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | | $ | $ |
| TRAILER INTERCHANGE COMPREHENSIVE COVERAGE | | ACTUAL CASH VALUE, COST OF REPAIR, OR $ WHICHEVER IS LESS. | $ |
| TRAILER INTERCHANGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE, COST OF REPAIR, OR $ WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | $ |
| TRAILER INTERCHANGE COLLISION COVERAGE | | ACTUAL CASH VALUE, COST OF REPAIR, OR $ WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO. | $ |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | $ |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | $ |
| PHYSICAL DAMAGE COLLISION COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO. | $ |
| PHYSICAL DAMAGE TOWING AND LABOR | | $ For Each Disablement Of A Private Passenger "Auto". | $ |
| | | | $ |
| | | | $ |
| | | PREMIUM FOR ENDORSEMENTS | $ |
| | | *ESTIMATED TOTAL PREMIUM | $ 6,771 |

This policy may be subject to final audit.

© ISO Properties, Inc., 2000          CA DS 14 10 01

| Symbol | Description Of Covered Auto Designation Symbols | |
|--------|---|---|
| 49 | Your "Trailers" In The Possession Of Anyone Else Under A Written Trailer Interchange Agreement | Only those "trailers" you own or hire while in the possession of anyone else under a written "trailer" interchange agreement. When Symbol "49" is entered next to a Physical Damage Coverage in Item Two of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer" in the possession of anyone else does not apply to that coverage. |
| 50 | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger type autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

**B. Owned Autos You Acquire After The Policy Begins**

   1. If Symbols **41, 42, 43, 44** or **45** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

   2. But, if Symbol **46** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

      **a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

      **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

   If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

   1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

   2. "Mobile equipment" while being carried or towed by a covered "auto".

   3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

      **a.** Breakdown;

      **b.** Repair;

      **c.** Servicing;

   **d.** "Loss"; or

   **e.** Destruction.

**SECTION II – LIABILITY COVERAGE**

**A. Coverage**

   We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

   We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

   We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

   **1. Who Is An Insured**

      The following are "insureds":

      **a.** You for any covered "auto".

      **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

         **(1)** The owner or anyone else from whom you hire or borrow a covered "private passenger type auto".

© ISO Properties, Inc., 2000

**(2)** Your "employee" or agent if the covered "auto" is a "private passenger type auto" and is owned by that "employee" or agent or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "private passenger type auto" owned by him or her or a member of his or her household.

**c.** The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected:

**(1)** Is being used exclusively in your business as a "trucker"; and

**(2)** Is being used pursuant to operating rights granted to you by a public authority.

**d.** The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

**(1)** Is being used exclusively in your business as a "trucker"; and

**(2)** Is being used pursuant to operating rights granted to you by a public authority.

**e.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

**a.** Any "trucker" or his or her agents or "employees", other than you and your "employees":

**(1)** If the "trucker" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

**(2)** If the "trucker" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are being used exclusively in the "truckers" business and pursuant to operating rights granted to the "trucker" by a public authority.

**b.** Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" occurs while the "trailer" is detached from a covered "auto" you are using and:

**(1)** Is being transported by the carrier; or

**(2)** Is being loaded on or unloaded from any unit of transportation by the carrier.

**2. Coverage Extensions**

**a. Supplementary Payments**

In addition to the Limit of Insurance, we will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

## B. Exclusions

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

© ISO Properties, Inc., 2000

**CA 00 12 10 01**  □

### 10. Completed Operations

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In the exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

### 11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

### 12. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

### 13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

### C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – TRAILER INTERCHANGE COVERAGE

### A. Coverage

1. We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

   a. **Comprehensive Coverage**

   From any cause except:

   (1) The "trailer's" collision with another object; or

   (2) The "trailer's" overturn.

   b. **Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

   c. **Collision Coverage**

   Caused by:

   (1) The "trailer's" collision with another object; or

   (2) The "trailer's" overturn.

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

3. **Coverage Extensions**

   The following applies as Supplementary Payments. In addition to the Limit of Insurance, we will pay for you:

   a. All expenses we incur.

   b. The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

   c. All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

   d. All costs taxed against the "insured" in any "suit" against the "insured" we defend.

   e. All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. **War Or Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for loss of use.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

**C. Limit Of Insurance And Deductible**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts minus any applicable deductible shown in the Declarations:

**1.** The actual cash value of the damaged or stolen property at the time of the "loss".

**2.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**3.** The Limit of Insurance shown in the Declarations.

## SECTION IV – PHYSICAL DAMAGE COVERAGE

**A. Coverage**

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing – Private Passenger Autos**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the "private passenger type" is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extension**

**a. Transportation Expenses**

We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any of the following:

   **a.** Any covered "auto" while in anyone else's possession under a written trailer interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

   **b.** Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for any such contest or activity.

   **c.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **d.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

   **e.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

   **f.** Any accessories used with the electronic equipment described in Paragraph **e.** above.

Exclusions **2.e.** and **2.f.** do not apply to:

   **a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

   **b.** Any other electronic equipment that is:

   **(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

   **(2)** An integral part of the same unit housing any sound reproducing equipment described in **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limits Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

   **a.** The actual cash value of the damaged or stolen property as of the time of "loss"; or

   **b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

     © ISO Properties, Inc., 2000

## D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION V – TRUCKERS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the accident or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is a "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examination under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance – Primary And Excess Insurance Provisions**

**a.** This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker". However, while a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Liability Coverage is:

**(1)** On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto".

**(2)** Excess if the power unit is not a covered "auto".

**b.** Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

**c.** Except as provided in Paragraphs **a.** and **b.** above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

**d.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**e.** Regardless of the provisions of Paragraphs **a., b.** and **c.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**f.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

© ISO Properties, Inc., 2000 **CA 00 12 10 01** □

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada; and

**e.** Anywhere in the world if:

    **(1)** A covered "auto" of the "private passenger" type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

    **(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION VI – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement; or

**2.** Any claim or "suit" by or on behalf of a governmental authority demanding,

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

    **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

    **(2)** Otherwise in the course of transit by or on behalf of the "insured";

    **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured Contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**6.** That part of any contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraphs **1.**, **2.**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherrypickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

**N.** "Property damage" means damage to or loss of use of tangible property.

**O.** "Suit" means a civil proceeding in which:

    **1.** Damages because of "bodily injury" or "property damage"; or

    **2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

    **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

**P.** "Trailer" includes semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

**Q.** "Trucker" means any person or organization engaged in the business of transporting property by "auto" for hire.

**R.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The **Other Insurance** Condition is changed by adding the following:

   **d.** When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

   **1.** One provides coverage to a Named Insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking or storing "autos", and

   **2.** The other provides coverage to a person not engaged in that business, and

   **3.** At the time of an "accident", a person described in **2.** is operating an "auto" owned by the business described in **1.**, then that person's liability coverage is primary and the Coverage Form issued to a business described in **1.** is excess over any coverage available to that person.

   **e.** When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

   **1.** One provides coverage to a Named Insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking or storing "autos", and

   **2.** The other provides coverage to a person not engaged in that business, and

   **3.** At the time of an "accident" an "insured" under the Coverage Form described in **1.** is operating an "auto" owned by a person described in **2.**, then the Coverage Form issued to the business described in **1.** is primary and the Liability Coverage issued to a person described in **2.** is excess over any coverage available to the business.

GHI-26

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PUNITIVE, EXEMPLARY AND EXTRA CONTRACTUAL DAMAGE EXCLUSION

This policy is changed by adding the following exclusion:

This policy does not insure against or provide indemnity for fines, penalties, exemplary or punitive damages or any other type or kind of judgement or award which does not compensate the party benefiting from the award or judgement for any actual loss or damage sustained.

This exclusion applies to all coverages provided under this policy.

GHI-27

# IMPORTANT NOTICE
## CONCERNING LIMITS OF FUTURE COVERAGE
## UNDER YOUR AUTOMOBILE LIABILITY POLICY

It is required with respect to policies providing automobile liability insurance that we inform you of the "limits of future coverage" under your policy. This means the specified reasons for which the insurer may cancel or refuse to renew your automobile liability insurance or increase the premium for the same coverage.

For purposes of cancellation, following is a list of the reasons cited in the law which may be the grounds for canceling your insurance (refer to the "cancellation" provisions in your policy for the items applicable under your policy):

(1) Nonpayment of premium.

(2) The driver's license or motor vehicle registration of the named insured or of any other operator who resides in the same household or customarily operates an automobile insured under the policy has been under suspension or revocation during the policy period or, if the policy is a renewal, during its policy period or the 180 days immediately preceding its effective date.

(3) Discovery of fraud by the named insured in pursuing a claim under the policy provided the insurer does not rescind the policy.

For purposes of nonrenewal or premium increase, the law provides that such action may be taken for certain reasons which shall include, but not to be limited to, the following:

(1) Accident involvement by the insured and whether the insured is at fault.

(2) Change in or addition of an insured or an insured vehicle under the policy.

(3) Change in the location of garaging of an insured vehicle.

(4) Change in the use of the insured vehicle.

(5) Convictions for violating any provision of the Vehicle Code or the Penal Code relating to the operation of a motor vehicle.

(6) Payment made by an insurer due to a claim filed by the insured or a third party.

Nonrenewal or increases may result form unspecified reasons that are both lawful and not unfairly discriminatory.

GHI-28

## POLLUTION LIABILITY COVERAGE – CHANGES

This endorsement changes the insurance provided under the Truckers Coverage form.

**LIABILITY COVERAGE** is changed as follows:

**LIABILITY COVERAGE** under this policy is extended to apply to "Bodily Injury" or "Property Damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants that are, or that are contained in any property that is:

(1) being transported or towed by the covered "auto"; or

(2) otherwise in the course or transit by the "insured".

However, this extension of coverage does not apply to:

(1) pollutants that are being handled, or are contained in any property that is being handled for movement into, onto or from the covered "auto"; or

(2) liability assumed under a contract or agreement.

**LIMIT OF LIABILITY –**    $10,000 any one occurrence
$20,000 aggregate

All other terms and conditions remain unchanged.

**Countersigned:** **LIVERMORE, CA 94551**    **By** _____
AUTHORIZED SIGNATURE

GHI-43

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RADIUS OF OPERATION – LIMITS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM
NON-TRUCKING POLICY

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Endorsement Effective: 11/11/2014 | Policy No. TXJ114105 |
| Named Insured:   Carlos A Reyna DBA: El Reparto Express | Countersigned by  *Jasbir Singh Mandi* |
| | (Authorized Representative) |

1.  The insurance coverages under this policy do not apply when a covered "auto" is operated beyond the mileage limitation shown under "Radius of Operation" in Item 3 of the declarations or in an attached endorsement.

2.  "Radius of Operation" will be determined from the location where the covered "auto" is principally garaged.

# LIMITATION ON THIRD-PARTY COVERAGE

## PLEASE READ CAREFULLY

## LOSS OF USE REIMBURSEMENT

In the event you are involved in an accident that results in damage to the other driver's vehicle and a claim is made under your policy, we will reimburse the other driver for loss of use of his/her vehicle up to a maximum of 10 (ten) days, including Saturday, Sunday, and holidays, and only for such time as the vehicle is undergoing actual hands-on repair work. We do not reimburse for loss of use due to unavailability of repair facilities or parts, scheduling delays, and the like.

This limitation is a part of Policy No. __TXJ114105_____ issued to:

    Carlos A Reyna DBA: El Reparto Express

By: GLOBAL HAWK INSURANCE COMPANY, RRG

Effective as of: __11/11/2014__
               Date

Countersigned at: LIVERMORE, CA 94551

By: _____
            Authorized Representative

GHI-7

This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.

GHI-15

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF USE ENDORSEMENT

In consideration of the reduced premium provided, it is warranted by the insured that no trips of commercial vehicles covered hereunder are covered when hauling any commodity other than **Gravel and Sand**
All other terms, conditions and agreements of the policy shall remain unchanged.

Any trailer, scheduled and/or unidentified, is only covered while attached to the scheduled vehicle on the policy.

This endorsement forms a part of Policy No.   TXJ114105                     issued to:

Carlos A Reyna DBA: El Reparto Express

By   GLOBAL HAWK INSURANCE COMPANY, RRG

And is effective   11/11/2014

Countersigned at   LIVERMORE, CA 94551

By _____
AUTHORIZED REPRESENTATIVE

GHI-16

# INSPECTION NOTICE

An investigation may be made regarding you and/or your company with respect to general reputation, business ethics and practices, as well as the condition of any property or operations we insure for you, including information regarding any "autos" used in your business and the motor vehicle records of those drivers operating the insured "autos". This investigation may also include information concerning your partners, officers and employees.

You may request information on the nature and scope of a report completed in connection with this policy by writing to:

**GLOBAL HAWK INSURANCE COMPANY, RRG**
**2575 COLLIER CANYON ROAD**
**LIVERMORE CA 94551**
**Attention: UNDERWRITING DEPT.**

**GHI-44**

# LIMITATION ON THIRD-PARTY COVERAGE

## PLEASE READ CAREFULLY

## TOWING REIMBURSEMENT

In the event you are involved in an accident that results in damage to the other driver's vehicle and a claim is made under your policy, we will reimburse the other driver only for one (1) towing to the nearest repair facility, or a maximum of $750.

This limitation is a part of Policy No.  TXJ114105

Issued to:  Carlos A Reyna DBA: El Reparto Express

By:  GLOBAL HAWK INSURANCE COMPANY, RRG

Effective as of:  11/11/2014
                              Date

Countersigned at  LIVERMORE, CA 94551

By: _____
              Authorized Representative

GHI-46

# LIMITATION ON THIRD-PARTY COVERAGE

## PLEASE READ CAREFULLY

## RENTAL VEHICLE REIMBURSEMENT

In the event you are involved in an accident that results in damage to the other driver's vehicle and a claim is made under your policy, we will reimburse the other driver for rental car costs up to a maximum of $750, excluding gas and insurance. Rental car reimbursement applies only for such time as the damaged vehicle is undergoing actual hands-on repair. Rental car costs incurred as a result of loss of use of the damaged vehicle arising out of unavailability of repair facilities or parts, scheduling delays, and the like are not reimbursable under your policy.

This limitation is a part of Policy No.   TXJ114105

Issued to:   Carlos A Reyna DBA: El Reparto Express

By: GLOBAL HAWK INSURANCE COMPANY, RRG

Effective as of:   11/11/2014
                          Date

Countersigned at  LIVERMORE, CA 94551

By:  _____
            Authorized Representative

GHI-47

**Endorsement**

## SERVICE OF SUIT CLAUSE

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States.

Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Global Century Insurance Brokers and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance, and hereby designates the above named President or Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms, conditions and exclusions of this policy remain unchanged.


_____
Authorized Representative

# PRIVACY NOTICE

Global Hawk Insurance Company recognizes the importance of our customers' trust. Keeping our customers' personal information confidential is a top priority for all Global Hawk Insurance Company employees, agents and their staff. This Notice, which is required by state and federal law, explains our Privacy Policies.

1) We will safeguard, according to strict standards of security and confidentiality, nonpublic, personal information our customers share with us. "Nonpublic, personal information," for example, would include such information as your name, address, social security number, and credit information. We will maintain safeguards, physical and electronic, to protect that information. We will conduct our business in a manner that keeps personal customer information secure.

2) We will limit the collection and use of customer information to the minimum we require to deliver superior service and to administer our business. We collect personal information about customers from the following sources:
   – From customers on insurance applications and related forms;
   – From your transactions with us, our affiliates or others;
   – From consumer reporting agencies; and
   – From your transactions with non-affiliated third parties.

3) It is our policy that only authorized Global Hawk Insurance Company employees agents and their staff who need to know your personal information will access and us it. Global Hawk Insurance Company workers who violate our Privacy Policies are subject to the disciplinary process.

4) It is our policy that we will not share personal customer information (either current or former customers) outside Global Hawk Insurance Company for any purpose other than the underwriting or administration of a customer's policy or for marketing of additional Global Hawk Insurance Company products, unless the disclosure has been authorized by the customer or is permitted or required by law.

5) Whenever we retain other organizations to provide support services on behalf of Global Hawk Insurance Company, we will require them to protect customers' personal information.

6) To help us keep your customer information up-to-date and accurate, please contact your Agent/Broker if there is any change in your personal information.

7) When necessary, we will review and revise our Privacy Policies to protect personal customer information.

GHI-29

# GENERAL PROXY

I, Carlos A Reyna DBA: El Reparto Express ,a member of Global Hawk Insurance Company Risk Retention Group, a State Corporation on the mutual plan, do hereby constitute and appoint either American Freight Forwarders & Transportation, Inc. or Jasbir Singh Thandi and or company representative to be my proxy agent, with full power of substitution, for a period of one year from this date, to vote my membership interest in the Corporation with respect to all matters submitted to the members at all regular and general meetings of the membership, or any adjournments thereof, and in all consents to any actions taken without a meeting, which may occur during said period. This appointment shall continue from this date until 11/11/2015, and during said period, my proxy shall have all of the power that I would possess with respect to the voting of my membership interest and granting of my consent. I hereby ratify and confirm all acts that my proxy shall do or cause to be done by virtue of and within the limitations set forth in this proxy.

I hereby revoke all proxies previously given by me with respect to my membership in the corporation.


IN WITNESS WHEREOF, I have executed this proxy on 11/11/2014.

# THIS ENDORSEMENT CHANGES THE POLICY.
# PLEASE READ IT CAREFULLY.

## ENDORSEMENT – SINGLE, DOUBLE, TRIPLE OR OTHER TRAILERS

The operation has been quoted and bound with    Single                                    trailers.

The schedule shows which tractors pull single and double trailers.  All other terms and conditions and agreements of the policy shall remain unchanged

This endorsement forms part of Policy no___TXJ114105_____

Issued to__ Carlos A Reyna DBA: El Reparto Express_____

By _GLOBAL HAWK INSURANCE COMPANY, RRG_____

and is effective____11/11/2014_____

Countersigned at__ LIVERMORE, CA 94551_____

By____ _Jarbu Singh Nanda_____

**AUTHORIZED REPRESENTATIVE**

**GHI-18**

# THIS ENDORSEMENT CHANGES THE POLICY.
# PLEASE READ IT CAREFULLY.

## RESERVATION OF RIGHTS ENDORSEMENT.

The insurer may seek reimbursement from the insured for any payments made by the insurer solely on account of a filing made with any regulatory commission.

The insurer also may seek reimbursement for any deductible paid by the insurer.

The deductible will be the sole responsibility of the insured, in event of a claim the insured will pay the deductible to Global Hawk Insurance Coif it is not adjusted by the insurance company in the settlement of the claim. Failure to do so on the part of the insured will involve legal proceedings against the insured. The insured will be responsible for collection fees, court fee, attorney fee and interest on the outstanding amount due from him.

This endorsement forms part of Policy No   TXJ114105

Issued to   Carlos A Reyna DBA: El Reparto Express

By   GLOBAL HAWK INSURANCE COMPANY, RRG

and is effective   11/11/2014

Countersigned   LIVERMORE, CA 94551

BY   *Janbir Singh Hardi*

**AUTHORIZED REPRESENTATIVE**

GHI-32

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION AND NONRENEWAL

We may cancel this policy by mailing, emailing, faxing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, written notice of cancellation, stating the reason for cancellation:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(7)** Continuation of the policy coverage would:

**(i)** Place us in violation of state or federal law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(8)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at the mailing address shown in the policy, before the expiration or anniversary date.

**a.** We may elect not to renew such coverage for any reason, except as provided in **(1)** and **(2)** below:

**(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan;

**(2)** We have:

**(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

**(b)** Experienced a substantial increase in the premium charged for reinsurance coverage.

**3.** We are not required to send notice of nonrenewal if the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

GHI-33

# GLOBAL HAWK INSURANCE COMPANY (RRG)
## Membership Term and Acknowledgement

Any shareholder that ceases to be insured by the corporation, for any reason whatsoever prior to an event set forth (a "Terminating Shareholder") shall have its shares of stock in the corporation repurchased by the corporation effective as of the final date on which insurance coverage for the Terminating Shareholder is in effect (the "Termination Date") upon following terms:

1. If termination occurs anytime and for any reason before three years of full coverage are held, the Shareholder is Not entitled to receive any portion of his or her total capital contribution previously paid in;
2. If termination occurs after the third full year of continuous insurance coverage, the Shareholder is entitled to receive cash in the amount of 100% of total capital contribution previously paid.
3. Notwithstanding any other provision of this Agreement, no shares shall be redeemed by the corporation and no payments shall be made by the corporation to the Shareholder if the Board, in its sole discretion, believes such payments would materially adversely affect the Corporation's financial condition. In addition, all amounts due to the Corporation for any reason from the Shareholder may be offset against any distribution to the Shareholder.

# GLOBAL HAWK INSURANCE COMPANY (RRG)
Delayed Reporting Deductible

POLICY NUMBER: TXJ114105

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
DEDUCTIBLE LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 11/11/2014 | |
|---|---|
| Named Insured:  Carlos A Reyna DBA: El Reparto Express | Countersigned By |

**A. DELAYED REPORTING**
   In the event you, or any driver operating under your authority, are involved in an "accident" which may result in a claim being made under your policy, you must report it to us or our authorized representative promptly and no later than 20 calendar days after the "accident".

**B. DEDUCTIBLE APPLICATION**
   1. **Policy With Deductible**
      If there is a" loss" in which no such notice is received and a claim is made under your policy, the deductible amount as shown in the Commercial Auto Form 03 01 12 93  will be doubled.

   2. **Policy Without Deductible**
      If there is a" loss" in which no such notice is received and a claim is mae under your policy and the amount as shown in the Commercial Auto Form 03 01 12 93 is $0, it will be $1,000.00.

**C. OUR RIGHT TO REIMBUSEMENT**
   To settle any claim or "suit" we may pay all or any part of any deductible shown in the Schedule. If this happens, you must reimburse us for the deductible or the part of the deductible we paid.

**GHI-50**                                    **Page 1 of 1**

# ENDORSEMENT

## NOTICE OF LOSS CONDITION

In the event of an "accident", claim, "suit" or "loss", as those terms are defined in the policy, You are required to give Global Hawk Insurance Company (RRG) prompt notice of the accident or loss. In the event You fail to provide such notice within a twenty calendar day period after such loss, which loss involves a 'covered auto', scheduled driver, or permissive driver, or which involves a claim against You, then there will be an additional late notice fee of $1000, payable upon notice and in addition to any applicable deductible.

This endorsement is part of Policy Number: TXJ114105

Issued to: Carlos A Reyna DBA: El Reparto Express

by GLOBAL HAWK INSURANCE COMPANY, RRG

Effective Date: 11/11/2014

# ENDORSEMENT

## EXCLUSION FOR ANY BODILY INJURY TO PASSENGERS

## OCCUPANT HAZARD EXCLUSION

## PLEASE READ CAREFULLY THIS ENDORSEMENT LIMITS COVERAGE

It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability does not apply to Bodily Injury including death at any time resulting therefrom, sustained by any person while in or upon, entering or alighting from the covered vehicle. There is no coverage under this policy for any bodily injury claims for any passengers whether in the covered vehicle or entering or alighting from the covered vehicle.

It is further agreed that, in the event the Company shall, because of a provision of a Federal or State statute, become obligated to pay any sum or sums of money because of such bodily injury or death resulting therefrom, the insured agrees to reimburse the Company for any and all loss, costs and expenses paid or incurred by the Company.

Further, your policy is amended as follows, Section II – Liability Coverage, B. Exclusions, is modified as follows, by the addition of the following paragraph:

**14. Passengers: This insurance does not apply to any 'bodily injury' or 'property damage' suffered by a passenger of the covered 'auto' whether that passenger or passengers are in the cab or in the sleeper or any other portion of the cab or tractor or other part of the covered 'auto'.**

## ENDORSEMENT

## SCHEDULED DRIVER COVERAGE LIMITATION

This endorsement modifies the coverage under your policy. Only drivers listed in the "DRIVER SCHEDULE", listed in the Global Hawk application, or added by endorsement , and approved by Global Hawk Insurance Company (RRG), which approval must be in writing, are covered under this policy .

Any other driver than a Scheduled Driver will  only be covered for liability purposes as a permissive user at the minimal limits of the California Financial Responsibility Laws, which are $15,000 per person, $30,000 per accident and $5,000 for property damage, and only if the vehicle is a Scheduled Vehicle.

If an application for an endorsement is made to add a driver as a Scheduled Driver and that application is denied by Global Hawk Insurance Company (RRG) then that driver will not qualify as a permissive user and is entirely excluded from the policy and has no coverage.

This endorsement is part of Policy Number: TXJ114105


Issued to: Carlos A Reyna DBA: El Reparto Express


by GLOBAL HAWK INSURANCE COMPANY, RRG


Effective Date: 11/11/2014

# ENDORSEMENT

## REDUCTION IN COVERAGE FOR PERMISSIVE USER

This endorsement limits the coverage provided by this policy. The limits of insurance shown on the Declaration page are subject to reduction to the California Financial Responsibility state mandatory minimum of $15,000 each person, $30,000 each accident, and $5,000 for property damage, when there is a permissive user of the "insured vehicle". If the claim arises in a state other than California, that state's financial responsibility minimum liability limits apply. Such coverage only applies if the vehicle used, operated or maintained by a permissive user is a Scheduled Vehicle. There is no coverage under this Policy for a permissive user driving any vehicle not listed as a Scheduled Vehicle on the Policy.

This endorsement is part of Policy Number: <u>TXJ114105</u>

Issued to: <u>Carlos A Reyna DBA: El Reparto Express</u>

By <u>GLOBAL HAWK INSURANCE COMPANY, RRG</u>

Effective Date: <u>11/11/2014</u>

# ENDORSEMENT

# SINGLE COMBINED AGGREGATE

### PLEASE READ: THIS LIMITS THE COVERAGE OF YOUR POLICY

The LIMIT is the most we will pay for any one accident or loss and is the limit of the amount that we will pay, in the aggregate, for any and all claims under this policy for either 'bodily injury' or 'property damage' or any combination of the two, regardless of the number of claims. Once that limit is reached, there is no further coverage under this policy.

This endorsement is part of Policy Number: TXJ114105

Issued to: Carlos A Reyna DBA: El Reparto Express

By GLOBAL HAWK INSURANCE COMPANY, RRG

Effective Date:  11/11/2014

# SINGLE COVERAGE LIMITATION

# EXCLUSION FOR DUPLICATE COVERAGE

**PLEASE READ: THIS LIMITS THE COVERAGE OF YOUR POLICY**

This policy only provides coverage for scheduled vehicles and named and scheduled drivers. If the insured is operating under a subhaul agreement and the prime carrier has trucker liability insurance for the vehicle at issue, then that other policy is primary and this policy to the subhauler is excess. At no time will this policy participate with any other policy that also covered the insured's vehicle, either on a primary or excess basis.

This endorsement is part of Policy Number: <u>TXJ114105</u>

Issued to: <u>Carlos A Reyna DBA: El Reparto Express</u>

By <u>GLOBAL HAWK INSURANCE COMPANY, RRG</u>

Effective Date: <u>11/11/2014</u>

**ENDORSEMENT**

## LIMITATION OF COVERAGE TO SCHEDULED VEHICLES ONLY
## ENDORSEMENT

This policy only provides liability coverage only for those specific vehicles identified on the schedule of vehicles, which schedule is part of the policy, either identified on the declaration page or the vehicle schedule, form GHI-10, by make, model, year and VIN. If the Named Insured operates or owns any other vehicles, including power units or trailers, which are associated with that Named Insured in the Federal Motor Carrier Safety Administration (FMCSA) Safety and Fitness Electronic Records System (SAFER), those vehicles are specifically excluded from coverage of any kind under this Trucker Liability policy unless and until those vehicles are scheduled by endorsement under this policy as covered scheduled vehicles and an additional premium is paid for that additional coverage.

This endorsement is part of Policy Number: <u>TXJ114105</u>

Issued to: <u>Carlos A Reyna DBA: El Reparto Express</u>

by <u>GLOBAL HAWK INSURANCE COMPANY, RRG</u>

Effective Date: <u>11/11/2014</u>

# ENDORSEMENT

## Non Trucker Liability Exclusion Endorsement

The liability coverage of this policy is modified as follows: any claim for property damage, bodily injury or any other claim which arises from an occurrence where the power unit is not under dispatch or is not hauling cargo is excluded from coverage. This policy does not cover bobtail liability or any liability that arises when the power unit is not engaged in hauling cargo or under dispatch.

This endorsement is part of Policy Number: <u>TXJ114105</u>

Issued to: <u>Carlos A Reyna DBA: El Reparto Express</u>

by <u>GLOBAL HAWK INSURANCE COMPANY, RRG</u>

Effective Date: <u>11/11/2014</u>

# General Change Endorsement

ENDORSEMENT NO. 0  Additional Premium <u>$0</u> Return Premium <u>$0</u>

**It is agreed that as of the effective date hereof the policy is changed in the following particulars:**

The limits of liability have been increased to 1,000,000 CSL

**Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, Or limitations of the policy to which this endorsement is attached other than as above stated when Countersigned by a duly authorized representative of the company and attached to**

Policy #: <u>TXJ114105</u>  From: <u>11/11/2014</u>  Issued to: <u>Carlos A Reyna DBA: El Reparto Express</u>

Issued by: <u>Global Hawk Insurance Company, RRG</u>

Countersigned: <u>Livermore, CA  11/11/2014</u>                    By: <u>Jasbir Singh Thandi</u>

Form E-1          (6:00PM   Standard Time)          (Authorized Representative)

# Insurance Policy

All driver/s must be reported (before hiring) and should be acceptable to the company. All Equipment (before taking the delivery) or any changes must be reported immediately and get all confirmation in writing.

Please report immediately any accident whether you are at fault or not.

This policy jacket with the declarations page, coverage parts, and endorsements, if any, issued to form a part thereof, completes this policy.

This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of this company shall have power to waive or be deemed to have waived any provision or condition of this policy unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.

In witness whereof, the Global Hawk Insurance Co (RRG) has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the declarations page by a duly Authorized Representative of the company.

President

# ENDORSEMENT

## TERMS AND DEFINITIONS GOVERNED BY FMCSA

This Commercial Auto Liability Policy is designed to comply with the regulations of the Federal Motor Carrier Safety Administration for interstate carriers or with the corresponding State regulations for intrastate carriers. In either case, the terms of this policy are designed to comply with the definitions found at 49 C.F.R. § 390.5, specifically as follows:

*Employee* means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler.

This endorsement is part of Policy Number TXJ114105 issued to:

Carlos A Reyna DBA: El Reparto Express

by GLOBAL HAWK INSURANCE BROKERS, RRG

with effective dates from 11/11/2014 to 11/11/2015.

Countersigned at Livermore, California

By: *Jarbir Singh Jhandi*

Authorized Representative